# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

DAVID A. THOMPSON,

                              Plaintiff,

v.

RJD CF WARDEN, et al.,

                              Defendants.

Case No. 24-cv-0357-MMA-DDL

**ORDER DENYING WITHOUT PREJUDICE PLAINTIFF'S EMERGENCY MOTION FOR A TEMPORARY RESTRAINING ORDER AND MOTION FOR A PRELIMINARY INJUNCTION**

[Doc. No. 38]

On August 11, 2025, Plaintiff David A. Thompson ("Plaintiff"), currently incarcerated at the Substance Abuse Treatment Facility ("SATF") in Corcoran, California, and proceeding *pro se* and *in forma pauperis*, filed an emergency motion for a temporary restraining order and motion for a preliminary injunction.  Doc. No. 38. Defendants State of California, California Department of Corrections and Rehabilitation, L. Schobelock, R. Barenchi, S. Gates, J. Moeckly, A. Reyes, Dr. Hodges, R. Blanding, B. Campell, V. Anderson, Dr. Kauffman, B. Millum, Gardner, Castro, and John Doe, *ADA Coordinator*, (collectively "Defendants") have not yet appeared in the action and therefore have not responded to the instant motion.[1]  For the reasons below, the Court **DENIES** Plaintiff's motion **without prejudice to refiling**.

---

[1] Waivers of service for the Defendants State of California, California Department of Corrections and Rehabilitation, V. Anderson, J. Moeckly, R. Barenchi, B. Millum, Hodges, R. Blanding, B. Campbell,

# I. BACKGROUND

Plaintiff filed his initial complaint on February 22, 2024.  Doc. No. 1.  The Court dismissed his complaint, *sua sponte*, for failing to file the required filing fee or moving to proceed *in forma pauperis* on February 27, 2025.  Doc. No. 3.  Plaintiff subsequently filed a motion to proceed *in forma pauperis*, which the Court granted while dismissing his complaint for failure to state a claim.  Doc. No. 8.  Plaintiff filed a first amended complaint ("FAC") on December 23, 2024, bringing claims against Defendants, construed as alleged violations of the Americans with Disabilities Act ("ADA") and his Eighth Amendment rights.  Doc. Nos. 14 ("FAC"), 18. Plaintiff claims more than a dozen RJDCF custody, health care, and inmate appeals officials violated his rights by denying his September 2023 request for permanent single-cell housing. *See id.* at 1–11.

The Court summarized his claims in its May 27, 2025 screening order:

> [Plaintiff's] FAC seeks damages and injunctive relief against the State of California, its Department of Corrections and Rehabilitation ("CDCR"), and various prison officials who are alleged to have denial his request for a permanent single-cell housing assignment while he was incarcerated at Richard J. Donovan Correctional Facility ("RJD") in 2023.

Doc. No. 18 at 2.  Plaintiff alleges that, in sum, he was repeatedly assaulted by his RJD cellmate due to his fecal incontinence.  FAC at 3–4; Doc. No. 14-1 at 2.  He additionally alleges that he sought disability accommodations due to his fecal incontinence—namely that he sought transfer to a single cell.  FAC at 5.  His requests, in his telling, were wrongfully denied, though RJD staff knew of his incontinence, its effects, and the assaults.  *Id.* at 5–9.  Thus, Defendants did not take adequate action to protect him.  *Id.*

---

and A. Reyes were returned executed on July 15, 2025.  Doc. Nos. 23–32.  Waivers for Defendants L. Schobelock, Kauffman, Gardner, and S. Gates were returned executed on August 11, 2025.  Doc. Nos. 35–37, 39.

Plaintiff continues that "[s]ince September 16, 2023, [he] has refused to take anyone as a cellmate to protect himself even though CO's have threatened to write an RVR 113 if [he] did not take a cellmate." *Id.* at 11.  "Thankfully they have only been threats . . . ." *Id.*  A declaration from his former cellmate likewise asserts that Plaintiff "had spinal fusion surgery on Sept. 13, 2023, and when he came back from the hospital he was moved to a cell . . . by himself." Doc. No. 14-1 at 2.  On January 5, 2025, Plaintiff filed a notice of change of address, informing the Court of his transfer from RJD to SATF; thus, Plaintiff is no longer housed at RJD.  Doc. No. 15.

Relevant to this motion, in its May 27, 2025 order, the Court: (1) dismissed Defendants James S. Hill, RJDCF Warden, and John/Jane Doe, Appeals Coordinator, based on Plaintiff's failure to state a claim against them; (2) dismissed all official capacity claims for damages against Defendants Schobelock, Barenchi, Gates, Moeckly, Reyes, Hodges, Blanding, Campbell, Anderson, Kauffman, Millum, Gardner, Castro, and John Doe, ADA Sergeant as barred by the Eleventh Amendment; and (3) dismissed Plaintiff's claims for injunctive relief as to Defendants Schobelock, Barenchi, Gates, Moeckly, Reyes, Hodges, Blanding, Campbell, Anderson, Kauffman, Millum, Gardner, Castro, and John Doe, ADA Sergeant as moot in light of his transfer from RJD to SATF. Doc. No. 18 at 9–10.

## II. LEGAL STANDARD

The authority for temporary restraining orders and preliminary injunctions can be found in Federal Rule of Civil Procedure 65.  Generally, notice to the adverse party is required before the court may issue a preliminary injunction or temporary restraining order. Fed. R. Civ. P. 65(a), (b)(1).  Rule 65(b) provides, however, that the Court may issue a temporary restraining order without notice to the nonmoving party if: (A) the movant sets forth specifics facts by way of an affidavit or verified complaint clearly showing that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and (B) the movant's attorney

certifies in writing any efforts made to give notice and the reasons why it should not be required.  Fed. R. Civ. P. 65(b)(1)(A)–(B).

The purpose of a temporary restraining order is to preserve the status quo pending the complete briefing and thorough consideration contemplated by full proceedings pursuant to a preliminary injunction.  *See Granny Goose Foods, Inc. v. Teamsters*, 415 U.S. 423, 438–39 (1974) (temporary restraining orders "should be restricted to serving their underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing, and no longer.").  A temporary restraining order as a form of preliminary injunctive relief is an "extraordinary remedy" that is "never granted as of right," and the movant has the burden to prove such a remedy is proper. *Winter v. NRDC, Inc.*, 555 U.S. 7, 20, 24 (2008); *see also Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997).

In general, the same showing is required for a temporary restraining order and a preliminary injunction.  *Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co., Inc.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001).  The party requesting preliminary injunctive relief must show that "[1] he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest."  *Winter*, 555 U.S. at 20; *see also Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1126–27 (9th Cir. 2009).

There are two types of injunctions: mandatory and prohibitory. "A mandatory injunction orders a responsible party to take action, while a prohibitory injunction prohibits a party from taking action and preserves the status quo pending a final resolution on the merits."  *Arizona Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1060 (9th Cir. 2014) (internal citations and quotations omitted).  A mandatory injunction goes well beyond simply maintaining the status quo and is particularly disfavored.  *Anderson v. United States*, 612 F.2d 1112, 1114 (9th Cir. 1979).  Mandatory preliminary relief should not be issued unless the facts and law clearly favor the moving party.  *Id.*

### III. DISCUSSION

Plaintiff here seeks what amounts to a prohibitory injunction, requiring that Defendant CDCR "house [him] in a permanent single cell for the duration of this litigation[,]" as he is presently.  Doc. No. 38 at 1.  Plaintiff asserts through declaration that he "suffer[s] from chronic mental health needs, including anxiety and PTSD symptoms, which are exacerbated by forced double-cell housing."  Doc. No. 38 at 5.  Due to this, he argues that he has "experienced humiliation, threats, discomfort . . . and assault" *Id.*  though he "has requested single-cell accommodations," he states those requests have been "denied or ignored."  *Id.*  Thus, he claims he "fear[s] ongoing retaliation and harm if forced to remain in a cell with others."  *Id.* at 6

As a preliminary matter, Plaintiff's motion does not strictly include Rule 65's required language as to notice to the opposing party.  *See generally* Doc. No 38.  As further discussed below, the Court sees no imminent harm that would likely result before Defendants could receive notice and respond—though Plaintiff filed this case in February 2024, he waited over one year to request a temporary restraining order and provides no indication that the harm he complains of has worsened or become more imminent in that period.  To the contrary, Plaintiff is no longer housed at RJD, where the conduct alleged in the FAC occurred.  Nevertheless, as Plaintiff is currently incarcerated and proceeding *pro se*, the Court turns to the factors for preliminary injunction.

Plaintiff must first illustrate that he is likely to succeed on the merits.  "To establish a substantial likelihood of success on the merits, [Plaintiff] must show 'a fair chance of success.'"  *In re Focus Media Inc.*, 387 F.3d 1077, 1086 (9th Cir. 2004) (quoting *Republic of the Philippines v. Marcos*, 862 F.2d 1355, 1362 (9th Cir. 1988) (en banc)).  First, in its May 27, 2025 order, the Court dismissed Plaintiff's claims for similar injunctive relief as to the RJD Defendants due to his transfer to SATF.  Doc. No. 18.  As it noted then, "[a]n inmate's transfer generally moots a claim for injunctive relief relating to his former prison's practices or policies, unless the suit is certified as a class action or there is evidence the prisoner will be transferred back."  *Id.* at 8 n.3 (citing *Endsley v.*

*Luna*, 750 F. Supp. 2d 1074, 1109 (C.D. Cal. 2010); *Preiser v. Newkirk*, 422 U.S. 395, 402-03 (1975); *Johnson v. Moore*, 948 F.2d 517, 519 (9th Cir. 1991) (per curiam)). Plaintiff alleges nothing in his motion to indicate a renewed likelihood of success as these claims for injunctive relief.  Plaintiff's stated rationale for requesting a single cell is fear of his past cellmate, but he alleges no facts to indicate he currently has reason to fear violence or harm at SATF, that he is currently double-celled or will be soon, that he faces imminent likelihood of being transferred back to his old cellmate at RJD, or that there is a likelihood he will be transferred to RJD at all.  Thus, these injunctive claims remain mooted.  *See, e.g.*, *Endsley*, 750 F. Supp. 2d at 1109–10; *Brown v. Reilly*, No. 220CV1709WBSACP, 2022 WL 2496077 *2 (E.D. Cal. July 6, 2022), *R&R adopted*, No. 220CV1709WBSACP, 2022 WL 4451196 (E.D. Cal. Sept. 23, 2022).

Relevantly, "the fact that the named Plaintiffs have standing to seek damages does not mean that they automatically have standing to seek injunctive relief."  *DZ Rsrv. v. Meta Platforms, Inc.*, 96 F.4th 1223, 1240 (9th Cir. 2024), *cert. denied*, 145 S. Ct. 1051 (2025).  "Past exposure to harmful or illegal conduct does not necessarily confer standing to seek injunctive relief if the plaintiff does not continue to suffer adverse effects."  *Id.* (quoting *Mayfield v. United States*, 599 F.3d 964, 970 (9th Cir. 2010)).  "Nor does speculation or 'subjective apprehension' about future harm support standing."  *Id.* (quoting *Mayfield*, 599 F.3d at 970).  Thus, though he still maintains claims for damages, he is unlikely to succeed on his claims for injunctive relief because those claims arise from fear of double-celling and particularly with a past cellmate—situations he provides no evidence are likely to repeat again, particularly as he is no longer at RJD.  *Cf. Rouser v. White,* 707 F. Supp. 2d 1055, 1065–66 (E.D. Cal. 2010) ("Because the inquiry here is whether plaintiff is likely to succeed on the merits of his claim for an injunction, the court need only address whether he is likely to show sufficient causation for injunctive relief."); *Pietrangelo v. Sununu*, No. 2021 DNH 067, 2021 WL 1254560 *5 (D.N.H. Apr. 5, 2021) ("[A] party who seeks a preliminary injunction must show a substantial likelihood of standing.") (internal quotation marks omitted).

Even were Plaintiff to demonstrate a likelihood of ultimately prevailing, he fails to demonstrate imminent harm. As discussed, is no longer at RJD or housed with the cellmate that allegedly assaulted him. Doc. No. 15. According to his operative pleadings, Plaintiff has not shared a cell with the cellmate in question since September 2023. FAC at 11. As further discussed, he asserts no imminent likelihood of transfer back. Likewise, he expresses no specific concerns of imminent assault from others, but instead a generalized fear of "retaliation and harm if forced to remain in a cell with others." Doc. No. 38 at 6. To issue a preliminary injunction or temporary restraining order, there must be more than a mere possibility of irreparable injury—"plaintiffs seeking preliminary relief [must] demonstrate that irreparable injury is *likely* in the absence of an injunction." *Winter*, 555 U.S. at 22 (emphasis original). The facts here do not demonstrate that likelihood sufficient to justify an "extraordinary remedy" like that requested here.

As to the balancing of the equities, Plaintiff summarily argues that "the risk of future harm to Plaintiff outweighs any administrative burden CDCR may face in placing him in a single cell." Doc. No 38. at 4. The Court disagrees. Though Defendants have not yet appeared in this action, and thus not responded to the FAC or Plaintiff's motion, Plaintiff fails to demonstrate likelihood of injury absent an injunction. Assuming even a minimal burden on Defendants, Plaintiff does not demonstrate that the equities fall in his favor.

As to the final factor, "[w]hen the reach of an injunction is narrow, limited only to the parties, and has no impact on non-parties, the public interest will be at most a neutral factor in the analysis rather than one that favor[s] [granting or] denying the preliminary injunction." *Stormans, Inc.*, 586 F.3d at 1138–39 (internal quotation marks omitted). "If, however, the impact of an injunction reaches beyond the parties, carrying with it a potential for public consequences, the public interest will be relevant to whether the district court grants the preliminary injunction." *Id.* at 1139. The Court "will not grant a preliminary injunction . . . unless . . . public interests [in issuing it] outweigh other public

interests that cut in favor of *not* issuing [it]." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1138 (9th Cir. 2011). The movant bears the burden of showing the injunction is in the public interest. *Stormans, Inc.*, 586 F.3d at 1139. Plaintiff offers only a conclusory sentence asserting a public interest in ensuring constitutionally adequate mental and medical health conditions in prison. Doc. No. 38 at 4. However, the benefit of this injunction—other than as a general interest in promoting civil and statutory rights—affects only Plaintiff's conditions. Thus, he has not met his burden as to this factor.

### IV. CONCLUSION

Because Plaintiff's motion, at each factor, facially lacks sufficient support for a temporary or preliminary injunction, the Court **DENIES** the motion **without prejudice**. For that reason, the Court also determines that a hearing on this motion is not necessary. *See, e.g.*, *Goldberg v. Barreca,* 720 F. App'x 877, 878 (9th Cir. 2018).

**IT IS SO ORDERED**.

Dated: August 15, 2025

HON. MICHAEL M. ANELLO
United States District Judge